J-S40041-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: T.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.B. | |
| | No. 141 MDA 2014 |

Appeal from the Order January 8, 2014
In the Court of Common Pleas of Schuylkill County
Juvenile Division at No(s): CP-54-JV-0001904-2004
CP-54-JV-0001944-2004

BEFORE: BENDER, P.J.E., BOWES, and PANELLA, JJ.

MEMORANDUM BY PANELLA, J.:            **FILED SEPTEMBER 15, 2014**

Appellant, T.B., appeals from the order entered on January 8, 2014, in the Court of Common Pleas of Schuylkill County. After careful review, we quash.

The factual background and procedural posture of this case is multifaceted. Of relevance to this appeal is the following. T.B. was adjudicated delinquent for a myriad of sexual related offenses in July 2004. The juvenile court, in imposing its dispositional order, committed T.B. to inpatient treatment where he remained. Upon T.B.'s attainment of his twentieth birthday on July 9, 2011, the State Sexual Offenders Assessment Board (SOAB), was notified of T.B.'s status. In accordance with 42 PA.CONS.STAT.ANN. § 6358, the SOAB conducted an assessment to determine whether T.B. was in need of commitment for involuntary treatment due to a

mental abnormality. ***See*** 42 PA.CONS.STAT.ANN. § 6358(c). The SOAB obtained T.B.'s entire court file through the Schuylkill County Juvenile Probation Department as permitted by 42 Pa.Cons.Stat.Ann. § 6307(a)(6.04). The probation department had in its possession mental health records containing communications that T.B. made to mental health professionals during the course of his treatment at Adelphoi Village and Southwood Psychiatric Hospital.

On September 26, 2011, T.B. received the completed assessment of the SOAB, dated August 25, 2011. At that time, he became aware that materials that he believed to be privileged were disseminated by the probation department to the SOAB assessor, Dr. Veronique Valliere, and that she relied upon confidential records in rendering her conclusions.

On October 6, 2011, T.B. filed a motion to strike the results of the SOAB assessment because it was based, in part, on confidential communications and disclosures made by the juvenile during the treatment process. T.B. sought a redaction of a twenty-five-page list of disclosures. The juvenile court denied T.B.'s requested relief and T.B. appealed. The appeal was docketed at 1835 MDA 2011. On December 1, 2011, the Commonwealth filed a motion to quash the appeal as interlocutory. That motion was granted on April 12, 2012; however, our Supreme Court granted allowance of appeal, vacated the order quashing the appeal, and remanded the matter back to this Court to reconsider the matter in light of its decision in ***Commonwealth v. Harris***, 612 Pa. 576, 32 A.3d 243 (2011). During the

- 2 -

pendency of the appeal, civil commitment proceedings continued against T.B. in the juvenile court.

On January 19, 2012, the Commonwealth initiated civil commitment proceedings against T.B. pursuant to PA.CONS.STAT.ANN. § 6403(a) and (b). A hearing was conducted and, on March 1, 2012, T.B. was civilly committed to Torrance State Hospital. T.B. filed an appeal from the commitment order. In the appeal, docketed at 534 MDA 2012, T.B. again contested the use of confidential mental health records in connection with the SOAB assessment for purposes of determining whether he should be committed under the dictates of § 6403. This Court consolidated the appeals.

A panel of this Court determined that statements of a juvenile made to a mental health professional while in treatment remain privileged under the psychotherapist-patient privilege and may be released to SOAB only with the juvenile's written consent. *See In the Interest of T.B., A Minor*, 75 A.3d 485, 496 (Pa. Super. 2013). As such, the panel vacated the orders of the juvenile court entered on October 19, 2011 and March 1, 2012 and remanded the matter to the juvenile court for a hearing and findings of fact to determine whether the statements, evaluations and summaries at issue were completed for treatment purposes. The panel further determined that "in the event the court determines that the statements, evaluations, and summaries were made for treatment purposes and the juvenile was not represented by counsel and informed of his right against self-incrimination, the court shall vacate the determination of the SOAB and may re-submit the

- 3 -

matter for evaluation by the Board without access the records in question."
*See id*., at 497. As such, the order of March 1, 2012, for involuntary commitment, that was vacated, became a nullity upon remand thereby necessitating that any involuntary commitment proceedings begin anew.

Upon remand, the parties agreed to a redaction of the information provided to the SOAB as it contained statements, evaluations and summaries for treatment purposes. The records were jointly redacted and a new assessment was conducted by Robert Stein, Ph.D. of the SOAB on September 13, 2013, utilizing the redacted records with no treatment notes included.

On January 6, 2014, the juvenile court held a dispositional review hearing based upon the new assessment of the SOAB that T.B. is in need of involuntary treatment. At the dispositional review hearing, the Commonwealth presented the testimony of Dr. Stein of the SOAB who performed the assessment. *See* N.T., Hearing, 1/6/14, at 7. Dr. Stein testified that T.B. has a number of psychiatric difficulties, and based upon his assessment, T.B. suffers from a mental abnormality. *See id*., at 7, 16. Dr. Stein opined that T.B. would meet the criteria for an Act 21 commitment. *See id*., at 14. The juvenile court determined "that the Commonwealth has established a prima facie case that [T.B.] has a mental abnormality which would make him a candidate for involuntary treatment." *Id*., at 27.

The Commonwealth then requested that the juvenile court move forward to a civil commitment hearing on its petition filed on January 19,

2012. **See id**., at 26. The juvenile court then elected to convert the dispositional review hearing into a court-ordered involuntary commitment hearing, pursuant to 42 PA.CONS.STAT.ANN. § 6403. In so doing, the juvenile court stated, "I'll proceed to the hearing now on the petition." **Id**., at 27. The Commonwealth offered the same evidence and, T.B. presented Timothy P. Foley, Ph.D. **See id**., at 28. At the conclusion of the hearing, the juvenile court took the matter under advisement and noted a decision would be forthcoming.

The juvenile court subsequently issued an order, which provides as follows:

> AND NOW, this 8th day of January, 2014, at 10:00 a.m., having found a *prima facie* case that T.B. is in need of involuntary treatment, the County Solicitor is hereby directed to file a petition to initiate proceedings for his civil commitment pursuant to 42 P.S. § 6403.

Order, 1/8/14, at 1.

In its accompanying opinion, the juvenile court explained its rationale for its decision. Particularly noteworthy to this appeal is the following language:

> This court finds that a *prima facie* case has been made that T.B. was in need of involuntary treatment in 2011; *however, we are not prepared to grant a petition for civil commitment without evidence of T.B.'s progress, or lack thereof, over the last two-and-one-half-years.*
>
> The parties felt they were limited to the record of his treatment up to May of 2011, when he was still 20 years old and subject to evaluation under Act 21. Since the instant proceedings are an extension, after remand, of the original evaluation pursuant to Act 21, it may be proper to evaluate a *prima facie* case based on

- 5 -

the records as they existed when T.B. was twenty years old, but no reasonable determination of his need for continual involuntary treatment can be made without knowledge of what has happened since in his treatment.

Accordingly, this court must reject the parties' offer to combine the disposition review with a commitment proceeding. We have determined that there is a *prima facie* case that T.B. requires further involuntary treatment. Now a new petition for civil commitment should be file by the county solicitor and a full hearing be conducted. The parties may decide to incorporate at that hearing the testimony offered in their proceeding, *but there can be no complete hearing without evidence of what has transpired since 2011.*

Juvenile Court Opinion, 1/8/14, at 4 (emphasis added). This appeal followed.

On appeal, T.B. raises the following issue for our review:

A. Whether the Order of the Honorable Judge Baldwin directing the Schuylkill County solicitor to file a petition for civil commitment pursuant to 42 P.S. Section 6403 should be stricken because it improperly granted a new trial in the nature of a civil commitment hearing sue esponte [sic], where there was no error of law and without a request by the parties, against the stipulation of the parties, after a finding made by the judge from the bench during the proceedings of a prima facie case and allowing the parties to proceed with and present all of their evidence for the civil commitment hearing?

B. Whether the opinion calls for evidence which is outside of the contemplation of the statute and violates the strict time limits set by the statute and would create an evidentiary record unlike any other person subject to Act 21 Civil Commitment Proceedings.

Appellant's Brief, at 6.

Before we address the issues raised by T.B., we must determine whether the January 8, 2014 order is an appealable order. "We may examine the issue of appealability sua sponte because it affects the Court's

jurisdiction over the case. An appeal must be taken from a final order." ***In re Miscin***, 885 A.2d 558, 561 (Pa. Super. 2005) (citations omitted). The definition of a final order is provided in Rule 341 of the Pennsylvania Rules of Appellate Procedure. "Rule 341 is fundamental to the exercise of jurisdiction by this court." ***Prelude, Inc. v. Jorcyk***, 695 A.2d 422, 424 (Pa. Super. 1997) (en banc). Rule 341 provides as follows:

**Rule 341. Final Orders; Generally**

(a)  **General rule.** Except as prescribed in subdivisions (d), and (e) of this rule, an appeal may be taken as of right from any final order of an administrative agency or lower court.

(b)  **Definition of final order**. A final order is any order that:

(1)  disposes of all claims and of all parties; or

(2)  is expressly defined as a final order by statute; or

(3)  is entered as a final order pursuant to subdivision (c) of this rule.

Pa.R.A.P. 341.

The order in question is not a final order as defined by Rule 341(b). The order simply makes a finding that the Commonwealth made a *prima facie* case that T.B. is in need of involuntary treatment and directs the county solicitor to file a petition to initiate proceedings for his civil commitment pursuant to 42 P.S. § 6403. **See** Order, 1/8/14. It is not an order for court-order involuntary commitment which would constitute a final order.

Rather, the order was entered by the juvenile court in accordance with § 6403. Under § 6403(b) where "the court determines that a prima facie case has been presented that the child is in need of involuntary treatment … the court shall order that a petition be filed by the county solicitor…" PA.CONS.STAT.ANN. § 6403(b). Only after the petition is filed can the court set a date for the civil commitment hearing and subsequently make a finding by clear and convincing evidence that "the person has a mental abnormality … which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence" and requires "immediate commitment of the person for involuntary inpatient treatment to a facility designated by the department." PA.CONS.STAT.ANN. § 6403(d). It is apparent that no such final disposition or commitment was ordered by the juvenile court in its January 8, 2014 order. As such, we are constrained to quash T.B.'s appeal as interlocutory.[1]

Appeal quashed.

Bender, P.J.E. joins the memorandum.

_____

[1] We note that T.B.'s appeal does not fall under the confines of Pa.R.A.P. 311, related to interlocutory appeals as of right or Pa.R.A.P. 312, related to interlocutory appeals by permission. Likewise, the order is not a collateral order under Pa.R.A.P. 313, which relates to "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b).

Bowes, J. files a dissenting memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/15/2014</u>